52-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
NORASIA CONTAINER LINES LTD
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
NORASIA CONTAINER LINES LTD,

            Plaintiff,

   -against-

CHEMEX INTERNATIONAL LLP,

            Defendant.
----------------------------------------------------x

08 CV 1114 (BSJ)

### MEMORANDUM OF LAW IN SUPPORT OF MOTION
### TO RECOGNIZE AND ENFORCE FOREIGN MONEY JUDGMENT
### AND FOR ATTORNEYS FEES, COSTS AND INTEREST

Of Counsel
Michael E. Unger (MU 0045)

NYDOCS1/299239.2

**PRELIMINARY STATEMENT**

Plaintiff NORASIA CONTAINER LINES LTD ("NORASIA"), by its attorneys, Freehill Hogan & Mahar, LLP, submits this Memorandum of Law, together with the Declaration of Kenneth John Ernest Habergham and the Affirmation of Michael E. Unger, in support of its Motion to Recognize and Enforce a Foreign Money Judgment and For Attorneys Fees, Costs and Interest, and for such other, further and different relief as the Court may deem just and proper in the premises.

**FACTS**

The facts of this matter are straightforward and are not in dispute. Plaintiff NORASIA, as carrier, entered into a maritime contract with Defendant CHEMEX, as shipper, to carry two containers said to contain 493 bags of crude naphthalene from Odessa Port, Ukraine to Nhava Sheva, India. Under the terms of the contract, the parties agreed that all disputes arising out of the contract would be subject to the exclusive jurisdiction of the English High Court of Justice sitting in London, and that English law would govern the contract and its enforcement. *See* Habergham Declaration, ¶3.

Shortly after the contemplated voyage commenced, CHEMEX's crude naphthalene cargo began to leak its hazardous contents on board NORASIA's vessel. It was soon discovered that CHEMEX had packaged the hazardous cargo improperly in violation of the International Maritime Dangerous Goods Code and in breach of the contract. As a direct result of CHEMEX's breach, NORASIA incurred damages, including but not limited to the cost of clean-up, totaling $88,447.04. In further breach of the contract, CHEMEX later failed to pay any of the costs arising out of its breach of the contract, though duly demanded. *See* Habergham Declaration, ¶¶4, 5.

Accordingly, NORASIA invoked the choice of forum clause in the contract and brought a suit against CHEMEX in the English High Court to recover amounts due and owing under the contract. *See* Habergham Declaration, ¶5. Though duly served with process in accordance with English procedural rules, CHEMEX, when faced with NORASIA's meritorious claims based on clear breaches of the contract, chose not to acknowledge service within the requisite time, or ever. *See* Habergham Declaration, ¶¶5, 6. On January 3, 2008, after finding it had jurisdiction over the subject-matter and the parties, the English High Court issued a default Judgment against CHEMEX for failing to appear in the action in the amount of in the amount of $93,935.34 together with costs in the amount of $946.91[1], for a total of $94,882.25 and providing for additional interest at the rate of 8% per annum until the Judgment is paid. *See* Habergham Declaration, ¶6, 9 and Exhibit thereto.

CHEMEX, in bad faith, has refused or otherwise failed to pay the Judgment, causing NORASIA to commence the instant enforcement proceedings in New York. On February 4, 2008, this Court granted NORASIA's Rule B application against CHEMEX and authorized the issuance of a writ of maritime attachment and garnishment against CHEMEX's assets in the amount of $117,698.52 (inclusive of the English Judgment, attorneys fees, costs and interest). Pursuant to the writ, NORASIA restrained assets of CHEMEX in the amount of $117,698.52, and is now fully secured with respect to the instant enforcement proceedings. CHEMEX was immediately given notice of the restraint in accordance with Rule B.2. *See* Unger Affirmation at ¶4. In addition, CHEMEX was requested pursuant to Rule 4(d) to waive formal service of process. To date, CHEMEX has not responded to the waiver request. *See* Unger Affirmation at ¶4. NORASIA arranged with the Clerk of the Court for the Southern District of New York to

---

[1] The English High Court Judgment awarded costs in the amount of £460. At the currency exchange rate of £1 = US$2.0585 provided by Lloyds List on November 26, 2007 (the rate contained in NORASIA's Claim Form submitted to the English court).

formally serve process on CHEMEX, which was accomplished on March 28, 2008. *See* Unger Declaration at ¶5.

## ARGUMENT

### Point I

### ADMIRALTY COURTS HAVE JURISDICTION OVER A CLAIM TO ENFORCE A FOREIGN JUDGMENT

Admiralty courts are vested with subject-matter jurisdiction to enforce a foreign judgment that is itself based on a maritime claim. Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987) (*citing* International Sea Food Ltd. v. M/V CAMPECHE, 566 F.2d 482 (5th Cir. 1978)).

In the instant motion, Plaintiff NORASIA seeks recognition and enforcement of an English High Court Judgment issued in favor of NORASIA and against Defendant CHEMEX based on maritime claims arising out of CHEMEX's breach of a maritime contract of affreightment. Accordingly, NORASIA's motion is properly before this Court.

### Point II

### THE ENGLISH HIGH COURT JUDGMENT IS SUBJECT TO RECOGNITION AND ENFORCEMENT AND JUDGMENT SHOULD BE ENTERED ACCORDINGLY

On January 3, 2008, the English High Court issued a money Judgment in favor of Plaintiff NORASIA and against Defendant CHEMEX in the amount of $94,882.25 (inclusive of the principle claim, costs and interest up to the date of the Judgment). Habergham Declaration, ¶6. This award of money damages to NORASIA is subject to recognition and enforcement by this Court pursuant to principles of comity and/or pursuant to the Uniform Foreign Money-Judgments Recognition Act, N.Y. C.P.L.R. §5301, *et seq.*

Comity is discretionary with the Court and may be granted with respect to "the legislative, executive or judicial acts of another nation," Disconto Gesellschaft v. Umbreit, 208 U.S. 570, 578 (1907) (*citing* Hilton v. Guyot, 159 U.S. 113, 163 (1895)), and is most often addressed when considering whether foreign orders and judgments are entitled to recognition and enforcement in the United States, United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc., 216 F.Supp.2d 198 (S.D.N.Y. 2002).

To determine whether to grant comity to a foreign judgment, U.S. courts generally consider whether the foreign court had valid personal jurisdiction over the defendant, and whether the proceeding abided by fundamental standards of procedural fairness. Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Café, 566 F.2d 861, 863 (2d Cir. 1977) (*per curiam*); Cunard S.S. Co., Ltd. v. Salen Reefer Services, A.B., 773 F.2d 452, 457 (2d Cir. 1985). The Second Circuit has further indicated that the grant of comity is appropriate where deference to the acts of a foreign tribunal does not violate United States policy interests and when the foreign procedure is fundamentally fair. Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240 (2d Cir. 1999); *see* Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A., 44 F.3d 187, 191 (3d Cir. 1994) (comity should only be withheld when its acceptance would be contrary to the interests of the United States). The reasoning behind the granting of comity to a foreign judgment is rooted in the concept of *res judicata*. *See* Alesayi Beverage Corp. v. Canada Dry Corp., 947 F. Supp. 658, 663 (S.D.N.Y. 1996); Alfadda v. Fenn, 966 F. Supp. 1317, 1327-28 (S.D.N.Y. 1997); *see also* Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525 (1931).

Here, the English High Court had valid personal jurisdiction over CHEMEX. CHEMEX not only maintained its registered address at Leeds, England throughout the duration of the

English proceedings, but also contractually agreed with NORASIA to submit all disputes between the parties to the jurisdiction of the English High Court. Moreover, there can be no question as to the fairness of English judicial proceedings, V. Corp Ltd. v. Redi Corporation (USA), 2004 U.S. Dist. LEXIS 20424, at *9 (S.D.N.Y. Oct. 7, 2004) (*citing* cases), and no policy interest of the United States (or of New York) would be violated by the granting of comity in this instance when the foreign judgment was based on claims arising out of the breach of a legally binding contract.

Other factors that could prevent a court from granting comity include: the partiality of the tribunal; the foreign jurisdiction's lack of subject matter jurisdiction; and the defendant's failure to receive proper notice according to American standards. *See, e.g.*, Guiness P.L.C. v. Ward, 955 F.2d 875, 877-90 (4th Cir. 1992); Philadelphia Gear, *supra*, 44 F.3d at 194. None of these factors is present in this case.[2]

As might be expected, the decisions of the Courts of England are routinely granted comity. Maxwell Commun. Corp. PLC v. Societe Generale, 93 F.3d 1036, 1040 (2d Cir. 1996) ("in our view, the doctrine of international comity supports deferring to the courts and laws of England"); Murray v. BBC, 906 F. Supp. 858, 865 (S.D.N.Y. 1995) ("an injunction issued by an English court will be enforceable in the United States under the doctrine of comity, provided the English proceedings were orderly, fair and consistent with United States policy"). *See also* Lindner Fund, Inc. v. Polly Peck Int'l PLC, 143 B.R. 807 (S.D.N.Y. 1992); Laker Airways Ltd.

---

[2] U.S. courts do not examine the reciprocity of the foreign judicial system – it is irrelevant whether an equivalent American decision would be enforced in the foreign judicial system. Pilkington Bros. P.L.C. v. AFG Indust., Inc., 581 F. Supp. 1039, 1043 (D.DE. 1984). Pursuant to the Act of State Doctrine, courts in one country "should avoid inquiries respecting the validity of the acts executed by a foreign sovereign within its territory." Bandes v. Harlow & Jones, Inc., 852 F.2d 661, 666 (2d Cir. 1988). *See* Underhill v. Hernandez, 168 U.S. 250, 252 (1897) ("[e]very sovereign State is bound to respect the independence of every other foreign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory").

v. Sabena, Belgian World Airlines, 731 F.2d 909 (D.C.Cir. 1984); Bandes, *supra*, 852 F.2d at 666; Pravin Banker Assoc., Ltd. v. Banco Popular del Peru, 165 B.R. 379, 384 (S.D.N.Y. 1994).

Accordingly, the English High Court Judgment directing CHEMEX to pay NORASIA $94,882.25 should be granted comity and made a Judgment of this Court.

The English High Court Judgment is also entitled to recognition and enforcement pursuant to the Uniform Foreign Money-Judgments Recognition Act, N.Y. C.P.L.R. §5301 *et seq*. Generally, New York has a "long-standing" practice in recognizing and enforcing foreign country money judgments. V. Corp Ltd., 2004 U.S. Dist. LEXIS 20424, at *9 (*citing* cases). New York courts, in particular, "have consistently upheld English judgments." The Society of Lloyd's v. Edelman, 2005 U.S. Dist. LEXIS 4231, at *10 (S.D.N.Y. March 21, 2005) (*citing* cases).

The New York Recognition Act grants judicial recognition to "**any** judgment of a foreign state granting or denying recovery of a sum of money" provided that the "foreign judgment is final, conclusive and enforceable where rendered". Id. at *5. Foreign judgments are deemed "conclusive" under New York Law unless "the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law", or if "the foreign court did not have personal jurisdiction over the defendant", subject to seven discretionary exceptions[3] not applicable here. Id. (*citing* N.Y. C.P.L.R. §5304).

---

[3] The seven discretionary exceptions are set forth in N.Y. C.P.L.R. §5304(b) which provides:

> A foreign court judgment need not be recognized if: (1) the foreign court did not have jurisdiction over the subject matter; (2) the defendant in the proceedings in the foreign court did nto receive notice of the proceedings in sufficient time to enable him to defend; (3) the judgment was obtained in fraud; (4) the cause of action on which the judgment is based is repugnant to the public policy of this state; (5) the judgment conflicts with another final and conclusive judgment; (6) the proceedings in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceeding in that court; or (7) in the case of jurisdiction based only on personal

The instant English High Court Judgment is a foreign judgment that qualifies for recognition and enforcement under the New York Recognition Act, C.P.L.R. §5301(b), in that it is a judgment of a foreign state granting the recovery of a sum of money that is unrelated to a judgment for taxes, fine or other penalty or in support in a matrimonial or family matter. The English High Court Judgment is also final, conclusive and enforceable in England (where it was rendered) in that the same reasons which support a granting of comity also support recognition and enforcement pursuant to the New York Recognition Act. No appeal has been taken by CHEMEX with regard to the English High Court Judgment, and the time within which it could have done so has expired. *See* Habergham Affidavit, ¶7. Accordingly, the English High Court Judgment is also subject to summary recognition and enforcement pursuant to N.Y. C.P.L.R. §5303 and should be made a Judgment of this Court.

**Point III**

**NORASIA SHOULD BE AWARDED ITS
REASONABLE ATTORNEYS FEES AND COSTS**

In addition to recognizing and enforcing the English High Court Judgment as a Judgment of this Court, NORASIA should also be entitled to attorneys fees and disbursements for the instant enforcement proceeding which were incurred solely by reason of CHEMEX's bad faith refusal to abide by the Judgment of the English High Court.

CHEMEX entered into a contract with NORASIA in which CHEMEX agreed to designate the English High Court as the forum for deciding all disputes between the parties. In accordance with the choice of forum clause, NORASIA commenced suit in the English High Court to recover damages caused by CHEMEX's violation of the International Maritime Dangerous Goods Code and other breaches of the contract. Despite having an active presence in

---

service, the foreign court was a seriously inconvenient forum for the trial of the action.

the jurisdiction, contractually agreeing to litigate in the forum and having been served with process, CHEMEX chose not to appear before the English High Court. As a result, the English High Court entered a default Judgment in favor of NORASIA and against CHEMEX pursuant to English law. CHEMEX then failed to honor the Judgment in England, though duly demanded, forcing NORASIA to incur the additional expense of seeking enforcement of the Judgment here in New York.

This Court has "inherent (equitable) power in a federal question case ... to award attorneys fees for 'willful disobedience of a court order as part of the fine to be levied on the defendant ... or when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" National Association of Letter Carriers v. U.S. Postal Service, 590 F.2d 1171 (D.C. Cir. 1978) (*quoting* Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 258-259 (1975); Budejovicky Budvar, N.P. v. Czech Beer Importers, Inc., 2006 U.S. Dist. LEXIS 50375, at *22 (D.Conn. July 10, 2006) (*citing* Hall v. Cole, 412 U.S. 1, 4-5 (1973)).

Based on this inherent equitable power, considerable authority which justifies an award of attorneys fees and costs in this case is found in the context of a defendant's bad faith refusals to honor arbitral awards.[4] Attorneys fees and costs incurred by a party seeking confirmation and enforcement of an arbitral award may properly be awarded when the other party has failed to honor the award without justification. *See, e.g.*, In the Matter of the Arbitration Between Bulkcarriers, Ltd. and Societe Al Alam Int'l, 1983 A.M.C. 1501, 1502 (S.D.N.Y. 1983) ("[i]t has been held that a court may assess attorney's fees for willful and unjustified refusal to abide by an

---

[4] Moreover, the parties agreed to the application of English law to the contract between them, which includes the English legal principle which permits the recovery of costs, including attorneys fees and disbursements, involved in the enforcement of an English Judgment as a matter of course. Habergham Declaration, ¶8. *See also* RLS Associates, LLC v. United Bank of Kuwait, 2005 U.S. Dist. Lexis 31562 at *9 (S.D.N.Y. Dec. 7, 2005) and Katz v. Berisford Int'l, 2000 U.S. Dist. Lexis 9535 at *19 (S.D.N.Y. 2000) (both recognizing the recoverability of attorney fees under the "English Rule").

arbitrator's award") (*citing* National Association of Letter Carriers v. U.S. Postal Service, 590 F.2d 1171 (D.C. Cir. 1978); United Steelworkers of Am. v. Interpace Corp., 447 F. Supp. 387 (W.D. PA. 1978); *see also* Int'l Union of District 50, United Mine Workers of Am. v. Bowman Transp. Inc., 421 F.2d 934, 935 (5th Cir. 1970) (the court in the exercise of equity may grant a petitioner's request for costs and attorneys fees).

Two cases in which the defendants failed to honor arbitral awards are factually identical to the one at present (except for the rendering tribunal), and are instructive. In The New York City District Counsel of Carpenters Pension Fund v. Unique Installers Inc., 2007 U.S. Dist. LEXIS 85178, at *6 (S.D.N.Y. Nov. 19, 2007), Judge Cote awarded attorneys fees and costs to a plaintiff seeking confirmation and enforcement because the defendant, *by failing to appear in the action*, "presented no justification or reason for its failure to abide by the arbitrator's decision". On the same facts, Judge Lowe also awarded attorneys fees and costs to a plaintiff:

> In the present case, [defendant] *has not appeared*. Thus, it is not possible to determine whether the failure to pay the award was willful, or in some way justified. On the other hand, the [defendant] has been given notification and the opportunity to respond both at the arbitration and for purposes of this petition, and has failed to do so. [Plaintiff] having already borne the legal costs of the arbitration, the Court in exercise of its equity jurisdiction, finds it appropriate to grant [plaintiff's] request for costs and attorneys fees associated with this petition.

In re Bulkcarriers Ltd., 1983 AMC 1501 (S.D.N.Y. Jan. 21, 1983) (emphasis added).

It would be logical for the same reasoning to apply here. A foreign litigation commenced pursuant to choice of forum clause agreed to between the parties is virtually indistinguishable from an arbitration triggered by a contractual agreement to arbitrate. It is undisputed that CHEMEX agreed to litigate all disputes in London. Notwithstanding its agreement, its active presence in the jurisdiction and its notice of the suit, CHEMEX unjustifiably failed to honor the

Judgment of the English High Court, causing NORASIA to engage in collection efforts in the United States. *See* Habergham Declaration ¶5. Having been given multiple opportunities to oppose the English Court's decision both in England and here in New York, CHEMEX has presented no justification or reason for its failure to pay the English High Court Judgment. Accordingly, Plaintiff NORASIA respectfully requests that the Court enter judgment against Defendant CHEMEX for attorneys fees and costs in the amount of $13,538.81 incurred in bringing the instant enforcement action here in New York. The amount of attorneys fees and costs for the U.S. proceedings is supported by the invoice attached as Ex. 1 to the Unger Affirmation regarding fees and disbursements already incurred and by ¶7 of the Unger Affirmation which contains an estimate of anticipated future fees and disbursements.

## POINT IV

### POST-JUDGMENT INTEREST SHOULD ALSO BE AWARDED

Post-judgment interest is generally awarded as a matter of course under English law which is recoverable at a rate of 8% per annum from the date of the judgment until the date the judgment is paid in full. *See* Habergham Declaration ¶9. As discussed above, the parties contractually agreed to the application of English law to the underlying dispute. The instant English High Court Judgment was issued on January 3, 2008 for the sum of $94,882.25, no portion of which has been paid by CHEMEX to date. Post-judgment interest began to accrue on January 3, 2008. To date, post-judgment interest against the English High Court Judgment amounts to $1,871.40, which will continue to accrue until the Judgment is paid in full. Accordingly, NORASIA respectfully requests that the Court enter judgment against CHEMEX for post-judgment interest in the amount of $1,871.40.

## CONCLUSION

For all the foregoing reasons, NORASIA respectfully requests that the Judgment of the English High Court be recognized and enforced as a Judgment of this Court, that Judgment be entered for NORASIA'S attorneys fees and costs in the United States and that post-judgment interest be awarded as part of the Judgment.

Dated: New York, New York
       April 2, 2008

                        Respectfully submitted,
                        FREEHILL HOGAN & MAHAR, LLP
                        Attorneys for Plaintiff
                        NORASIA CONTAINER LINES LTD

By: _____
                        Michael E. Unger (MU 0045)
                        80 Pine Street
                        New York, NY 10005
                        (212) 425-1900
                        (212) 425-1901 fax