UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

NORASIA CONTAINER LINES LTD., **08 Civ 1114 (BSJ)**

Plaintiff,

-against-

CHEMEX INTERNATIONAL LLP,

Defendant.

---------------------------------------------------------------x

**DECLARATION OF KENNETH JOHN ERNEST HABERGHAM**

I, Kenneth John Ernest Habergham, of Essex House, Manor Street, Hull, HU1 1XH, United Kingdom, pursuant to Section 1748 of Title 28 of the United States Code, hereby declare and say the following under penalty of perjury:

1. I am a solicitor of the Supreme Court of England and Wales and a partner in the firm Andrew Jackson of the above address. I have had conduct of this matter on behalf of Norasia, Plaintiff, receiving my instructions via their protection and indemnity association, The Standard Steamship Owners' Protection and Indemnity Association (Bermuda) Limited ("the Standard Club"). Where the facts and matters to which I refer are within my own knowledge, they are true. Where they are not within my own knowledge, they are true to the best of my knowledge and belief, being derived from documents in my possession and my conduct of the matter generally, and from documents and information supplied to me by The Standard Club.

2. The nature of my instructions were to do the following: Firstly, I was to carry out various searches against the first defendant in this action, Chemex International LLP ("Chemex") to more fully identify that company and assess their credit worthiness; secondly to write a letter before action demanding payment for breach of contract, more fully

particularised below; and, if there was no satisfactory response, to commence proceedings in accordance with the agreement reached between Norasia and Chemex and contained in the relevant bill of lading, before the High Court of Justice in London, applying English law.

3.      On receipt of papers from The Standard Club, including two survey reports commissioned at the Ports of Jebel Ali and Jeddah, together with the relevant bill of lading, I formed the view that the Plaintiff had contracted to carry two 40 foot high cube containers containing crude naphthalene from Odessa, Ukraine, to Nhava Shevea, India, but that there had been a breach by the Defendant of firstly, the implied warranty that exists under English common law upon a consignor that the goods would be fit to be carried in a condition they were delivered to the carrier, without danger of damage to either the carrying vessel or other cargo; and, breaches of specific terms of the bill of lading. The terms of the bill of lading contain specific warranties by the Merchant, as defined, as to the fitness of method of packing of the goods, and specific indemnity to the carrier, if there is any liability arising out of any defect in such packaging. The bill of lading also contained an exclusive English law and jurisdiction clause, giving jurisdiction to the English High Court of Justice sitting in London.

4.      A letter before action was dispatched to Chemex on the 12 November 2007. On the 22 November, in the absence of any reply, I telephoned the address of Chemex given on the documents filed with the United Kingdom Companies House and spoke with a representative of Chemex. That representative acknowledged receipt of the letter together with confirmation that it had been forwarded to the relevant personnel within Chemex. There was no substantive answer to the allegations made and I made it clear that if they were not to respond, sensibly and substantively, then proceedings would follow in accordance with the law/jurisdiction clause in the bill of lading.

5.      There was no reply to the letter before action from Chemex. Therefore, on the 30

November 2007, on behalf of Norasia, I commenced proceedings against Chemex International LLP and Rohan Dyes and Intermediaries Ltd., the consignee. The process was served, as Norasia are entitled to do under English procedural rules, by first-class post sent to the address given on the documents filed by Chemex with Companies House. At the same time, I filed at the High Court of Justice the certificate of service which states the method of service and the deemed date of service. The letter date is important because it is the trigger from which the Court works out when the defendant should file the form of acknowledgement of service. Ordinarily, when returning this form, the defendant indicates whether it intends to either (a) admit the claim (b) admit part of the claim (c) defend the entire claim or (d) contest the jurisdiction of the Court. A defendant has 14 days, after service of the claim form, within which to file this form at the Court.

6. Chemex did not file an acknowledgement of service at the Court within the 14 day time limit or at all. Therefore, I requested that a judgment in default be granted against Chemex. This was duly granted. A copy of the judgment is attached. It bears the Court's seal of 3 January 2008.

7. Chemex has not applied to set aside the judgment. This was a regularly entered judgment. Therefore, there is an obligation upon Chemex, if it wishes to set aside or vary the judgment to make an application to the court. They have to act as quickly as possible. Civil Procedure Rules 1998, 13.3(2) makes it clear that:

"In considering whether to set aside or vary a judgment entered under Part 12 **[this is the applicable court rule under which judgment in default was entered]** the matters to which the court must have regard include whether the person seeking to set aside the judgment made an application to do so promptly"

In addition, Chemex also has to satisfy the court that it has "a real prospect of success with

defending the claim" See 13.3.(1)(a).

As Chemex has steadfastly maintained silence in this matter, I submit it must speak volumes about Chemex' own views of prospects of defeating the claim.

What is clear is that Chemex has not acted promptly. Chemex was served at their registered office on 29 January 2008 by first class post. Some five weeks have elapsed since then with no response whatsoever. In addition, the case of Nolan v Devonport [2006] EWHC2025 (QB) is authority for the proposition that a debtor who did nothing until the creditor sought to enforce the judgment, then applied to set aside, was refused permission to set aside, it being held that the debtor's conduct amounted to an abuse of process.   See paragraph 7 of the attached judgment.

8.   In the event that a defendant fails to honour a judgment of the English High Court, attorneys' fees and disbursements are recoverable by the plaintiff in a proceeding to enforce a judgment under principles of English law, the governing law of the contract between the parties.

9.   Also recoverable under principles of English law is post-judgment interest at a rate of 8% per annum from the date of the judgment until the date the judgment is paid.  The instant judgment was issued on 3 January 2008 for a sum of $94,882.25, no portion of which has been paid by Chemex to date.  According to English law, interest began to accrue on 3 January 2008, and will continue to accrue until the judgment is paid.

10.   I declare, under the penalty of perjury of the laws of the United States of America that the contents of this declaration are true to the best of my knowledge and belief.  I am duly authorised to sign this declaration on behalf of the Plaintiff, Norasia.

Dated this 17th March 2008

Signed ..............................................

Kenneth John Ernest Habergham

Andrew Jackson Solicitors
Essex House
Manor Street
Hull HU1 1XH
England

Nolan v Devonport [2006] EWHC 2025 (QB) (21 July 2006) Page 1 of 5

[Home] [Databases] [World Law] [Multidatabase Search] [Help] [Feedback]

BAILII

# England and Wales High Court (Queen's Bench Division) Decisions

**You are here:** BAILII >> Databases >> England and Wales High Court (Queen's Bench Division) Decisions >> Nolan v Devonport [2006] EWHC 2025 (QB) (21 July 2006)
URL: *http://www.bailii.org/ew/cases/EWHC/QB/2006/2025.html*
Cite as: [2006] EWHC 2025 (QB)

[New search] [Printable RTF version] [Help]

**Neutral Citation Number: [2006] EWHC 2025 (QB)**
Case No: 6LS90043 (previously 1995 P 0017)

**IN THE HIGH COURT OF JUSTICE**
**QUEENS BENCH DIVISION**
**LEEDS DISTRICT REGISTRY**

Leeds Combined Court
The Courthouse
1 Oxford Row
Leeds LS1 3BG
21st July 2006

Before:

**HIS HONOUR JUDGE S P GRENFELL**

---

**Between:**

| | |
|---|---|
| **PETER NOLAN** | **Claimant** |
| **- and -** | |
| **STEPHEN GORDON DEVONPORT (deceased) (1)** | |
| **GILLIAN MARGARET DEVONPORT (2)** | **Defendants** |

---

**Mr Pépin Aslett (instructed by Bishop & Co) for the claimant**
**Miss Eleanor Temple (instructed by Ringrose Law Group) for the second defendant**
**Hearing date: 12th June 2006**

---

**HTML VERSION OF JUDGMENT**

---

Crown Copyright ©

**His Honour Judge Grenfell:**

1. In 1995 the claimant, Mr Nolan, obtained judgment against both defendants, who were husband and

http://www.bailii.org/ew/cases/EWHC/QB/2006/2025.html 13/03/2008

wife, Mr and Mrs Devonport, in the sum of £645,461.64 with interest. Mr Devonport was adjudged bankrupt in 1995 and died in 2000. Mrs Devonport, the second defendant, claims to have been unaware of the judgment against her until May 2001. On the 10th October 2002 the claimant obtained permission to execute the sum due (by then over £1m) by way of charging order. In November 2002 the second defendant responded by indicating that she would issue an application to set aside the judgment, which she did on the 17th December that year. This year, 2006, the second defendant has finally sought to bring that application to a hearing. The claimant has issued an application (7th March 2006) to strike out the set aside application as an abuse, and to obtain a final charging order.

2.    Miss Temple, counsel for the second defendant, has sought to explain the extraordinary delay in pursuing the application to set aside. She draws attention to the following. In 2000 the claimant applied to register a legal charge claimed to have been entered into between the claimant and both defendants on the 12th January 1995 and to have been executed in 1997. In 2001 the Deputy Solicitor for the Land Registry directed the issue of proceedings in the Chancery Division to determine the validity or otherwise of the legal charge. These were issued (MA191152) in July 2002. The second defendant filed a defence and counterclaim, raising the defence that she was required by an acquaintance of her husband to sign under duress and that she was not given proper advice; the claimant filed a reply and defence to counterclaim in the August. On the 10th October 2002 the claimant was given permission by District Judge Chapman at Salford without a hearing to execute the judgment by way of charging order as against the second defendant.

3.    In November 2002 the second defendant was granted Community Legal Services ("CLS") funding for an application to set aside the judgment and charging order. District Judge Chapman ordered her to make the set aside application by the 18th December, which she made on the 17th. Witness statements were exchanged in February and March 2003. The claimant obtained handwriting expert evidence in the June.

4.    In August 2003 the application to set aside was adjourned by the District Judge in Salford and ordered to be transferred to Leeds, the second defendant's home court. Since then it appears that the file has been lost somewhere in Salford.

5.    Nothing happened thereafter until in November 2004 the second defendant's CLS funding was revoked in respect of the instant proceedings. In April 2005 her funding for the Chancery proceedings was discharged. She was a litigant in person as from November 2004. In August 2005 the Land Registry adjudicator directed that he would determine the dispute between the parties ("the DCA proceedings"), but in January this year adjourned them pending determination of the Chancery claim and upon the claimant's confirming that that he proposed to take an active step in the instant action, namely applying to strike out the set aside application. There is then a number of communications by or on behalf of the second defendant to Salford Court enquiring about the listing of her application to set aside the judgment (26th January, 3rd February, 14th February, 27th February, 6th March and 20th March). By this time, the 20th March, it is clear that the second defendant had re-instructed her solicitors. In the meantime, District Judge Greenwood at Leeds, by a letter dated 8th March, was informed of the history of this matter by the claimant's solicitors, who had not themselves been informed of the second defendant's or her solicitors' communications with Salford Court. At the same time, the claimant's solicitors enclosed the strike out application dated 7th March. District Judge Greenwood immediately referred the matter to myself as Designated Civil Judge and I directed on the 17th March (internally) that both applications be heard by June. On the 22nd March Leeds Court sent out a notice of confirmation that the proceedings had been transferred to Leeds. There was some confusion when the matter first was listed before me on the 31st May as to which application was before the court, but I adjourned the claimant's application to the 12th June specifically adjourning the second defendant's set aside application to await the outcome of this.

6.    The issues for me to determine on this application to strike out the second defendant's set aside application are: whether it would be appropriate to do so in this case; whether the court in any event should make a final charging order. The question whether the court has jurisdiction to strike out the application is no longer pursued.

7.    Mr Aslett, counsel for the claimant, submits that the second defendant's application itself and its prosecution has been largely reactive to the claimant's moves to enforce the judgment. In simple terms it was not made promptly within Part 13.3(2) Civil Procedure Rules and is an abuse of the court process.

8. He submits that the only sensible inference to be drawn, from what has occurred or more particularly what has not occurred, is that the second defendant had no intention of bringing the set aside application to court. To this Miss Temple responds that the second defendant's actions of the early months of this year culminating in District Judge Greenwood's Order clearly indicate her intention to do so. Nevertheless, I cannot help observing that the Adjudicator's Order in the DCA proceedings in January of this year recording that the claimant was to take steps within these proceedings appears to have been the stimulus for her to attempt to bring the set aside application on for hearing. There is no evidence to suggest that, without that stimulus she would have spontaneously sought to revive it. In the event, the claimant took his own step of applying to strike it out.

9. Mr Aslett relies on an abuse of process argument based on the substantial delay and breaches of Rules or Orders of the court. He highlights the relevant periods to take into account as 18 months from the second defendant's claimed first knowledge of the judgment against her and the application to set aside; 3 months to readiness for a hearing; 36 months from readiness for hearing to District Judge Greenwood's Order. He highlights, in particular, failure on the part of the second defendant to bring the application as soon as it was apparent that it needed to be made (paragraph 2.7 Practice Direction to Part 23) ; failure to help the court to further the overriding objective, in particular, to deal with the application expeditiously (Part 1.3); failure to file evidence in response to the claimant's by the 28th February 2003 – such statement as was served was unsigned and, therefore, unverified – (District Judge Chapman's Order of the 13th January 2003).

10. Miss Temple responds that, once the application was made, it was pursued properly through Salford Court; that the second defendant cannot be blamed that the court lost the file and failed properly to transfer the case to Leeds until this year; that a large proportion of the 36 months delay can be attributed to the second defendant's being a litigant in person; that due allowance should be made for this.

11. Mr Aslett submits that the claimant will suffer undue prejudice if the application is allowed to be heard. In particular, the set aside application has held up the proceedings for registration of the Legal Charge; there are 3 other charges against the property; the property has been abandoned by the second defendant; the first defendant's Trustee in Bankruptcy is liable to effect a sale before the Charging Order is made absolute, if that matter is not resolved now; that there has been considerable erosion of the equity in the property; a fair hearing of the application is not now possible in view of the passage of time – the central issue at the hearing would be whether the second defendant was served with the writ in February 1995; that if judgment were to be set aside a fair trial could not now take place; many documents have been destroyed; the second defendant has no other assets; delay has meant that interest on the judgment debt is capped at 6 years.

12. Miss Temple submits that the prejudice relied on is no more than inconvenience and that, in any event, there is nothing that could not have been raised in answer to the hearing of the application to set aside. Further she submits that the Civil Procedure Rules give the court a variety of sanctions within its armoury to deal with prejudicial delay; that striking out the application, which would determine the case finally against the second defendant, is a draconian step which ought not to be taken, if there is any other sanction to be applied that would still enable the merits of the set aside application to be heard.

13. Although Miss Temple submits that the second defendant's Human Rights would be prejudiced, if the application were struck out, it is plain to me that she has had proper access to the courts at all times. The real question is whether she has chosen to take sufficient advantage of the procedures open to her. For those reasons, consideration of the second defendant's human rights does not advance the matter one way or the other.

14. The Rule under which the court has the power to strike out an application is the general power contained in Part 3.1(2)(m) which enables the court to take any step for the purpose of furthering the overriding objective. It is equally clear that the prime responsibility for furthering the overriding objective lies with the court. In my judgment, I have jurisdiction to strike out the set aside application, should it be just to do so in furthering the overriding objective.

15. Whilst I must not in effect prejudge the application to set aside, it seems to me that in considering the merits of the claimant's application to strike out, I may have an eye to the prospects of the set aside application succeeding. In this regard, it seems to me that the second defendant has insuperable difficulties, based on the chronology alone, to overcome the first hurdle of showing that she brought her application to set aside the judgment promptly. The delay between the time when she says she first became aware of the judgment against her, 2001, and the bringing of the application only when

directed to do so by the court at the end of 2002, is impossible to explain other than that she did not think of taking any action to set aside the judgment until it became clear that the claimant was seeking to enforce it against her.

16. In my judgment, that would be an insufficient reason for failing to apply to set aside judgment promptly. Once a person learns of a judgment having been entered against him or her, then, if there is real merit in the defence available to that person, it is incumbent on him or her to take prompt action to have the judgment set aside. On any view, it cannot be said that the second defendant did so. The only question for the hearing of the application, in addition to whether there is any merit in the defence which she seeks to advance, is whether it was reasonable to sit back and wait until the claimant took steps to enforce. The difficulty with that is that it is entirely a matter for the party who has a judgment in his favour to decide when and how to enforce it. Many judgments remain outstanding and unenforced for years, whilst the judgment creditor awaits the right moment to enforce.

17. In my judgment, it is clear that the real reason for seeking to set aside judgment is to frustrate enforcement. Had the real reason been that the second defendant had a meritorious defence, then, in all the circumstances, she would surely have wished to apply to have such a significant judgment set aside immediately. The former reason, in my judgment, is capable of being an abuse of the court's procedure.

18. I have considered the fact that for a time the second defendant was without legal representation, but, in my judgment, that does not begin to explain her inaction so far as seeking to strike out the judgment is concerned. I have also taken into account the delay between the District Judge at Salford ordering that the matter be transferred to Leeds and the matter first coming before a District Judge at Leeds earlier this year. However, it is remarkable that, until the second defendant made her enquiries of Salford Court in January this year, no communication is said to have been made with Salford Court between August 2003 until then.

19. In terms of prejudice, in my judgment, by keeping her application to set aside judgment extant, the second defendant has in conjunction with the other proceedings effectively delayed enforcement of the judgment. However, now that her application has a hearing date this ground of prejudice affects the merits of the application itself rather than the question of strike out.

20. I have been concerned about the failure of the Court actively to manage the application to set aside judgment as from August 2003. Whilst it could be said that the second defendant was in some difficulty even then in showing that she had acted with sufficient promptness, there was, nevertheless, an application before the court which required hearing on its merits. Salford Court made an order transferring the application to Leeds, but this order does not seem to have been effected. Had it been so, I should have expected Leeds Court to fix a hearing on receipt. In the event, that did not happen, until the claimant's solicitor drew the matter to the attention to Leeds earlier this year. However, as Mr Aslett rightly submitted, the second defendant herself had a duty to help the court to further the overriding objective, in particular, to deal with the application expeditiously (Part 1.3 Civil Procedure Rules). It is not enough for a party to sit back and to await further directions of the court, albeit that the court is under a duty to manage the application. If there is delay, Part 1.3 makes it clear that the parties do have a duty to prompt the court.

21. In matters of procedure before the court, both parties have that duty. However, in the circumstances of this case where the claimant had judgment and the only attempts to pursue an application to set aside that judgment had been reactive to the claimant's attempts to enforce, it would have been unrealistic to have expected the claimant to prompt the court earlier than he did. Even so, I cannot help observing that, had he done so, in all probability the application would have been listed in 2003 and not 2006. This is a matter which has given me particular concern.

22. It is no answer, on the other hand, for Miss Temple to say that for some of the intervening period the second defendant was a litigant in person. Firstly because for at least a year she still had the services of a solicitor and secondly she is plainly an intelligent woman who was well aware of the situation that faced her. Nor is it sufficient to rely on the time taken to obtain handwriting expert evidence, although I am surprised that the report obtained by the second defendant has not been disclosed or the claimant's expert's report agreed.

23. In my judgment, the second defendant's failure to help the court to further the overriding objective, in particular, to deal with the application expeditiously, is far greater than that of the claimant and does not avail her in the end.

24. I have come to the conclusion that the claimant's application to strike out the second defendant's set aside application must succeed. The claimant, in my judgment, had no choice but to take the initiative to bring the extant but dormant application to a head with an application to strike it out. I am satisfied for the reasons that I have given, that the claimant would be unduly prejudiced were the application to set aside heard; that the failure to pursue the application, in the circumstances of this case, is fatal to its prospects of success in any event; that the application is itself an abuse of the court's procedure; that there is no alternative order but to strike out, in the circumstances.

25. For the reasons that I have given, I am satisfied that it is now right to make the charging order final and I so order.

---

**BAILII:** Copyright Policy | Disclaimers | Privacy Policy | Feedback | Donate to BAILII
URL: *http://www.bailii.org/ew/cases/EWHC/QB/2006/2025.html*

# Judgment for Claimant
## (in default)

| IN THE HIGH COURT OF JUSTICE<br>Queen's Bench Division Commercial Court<br>ROYAL COURTS OF JUSTICE | |
|---|---|
| Claim No. | 2007 FOLIO 1592 |
| Claimant (including ref.) | Norasia Container Lines Ltd<br>KJEH/4927/70 |
| Defendant (including ref.) | Chemex International LLP (1st Defendant) |
| Date | 23 January 2008 |

SUPREME COURT OF JUDICATURE — ADMIRALTY & COMMERCIAL REGISTRY — 3 JAN 2008

Seal

To XXXXXXXX [Defendant] XXXXXXXXX

Chemex International LLP
2 Stable Court
Beechwoods Elmete Lane
Roundhay
Leeds
LS8 2LQ

**To the Defendant**

You have not replied to the claim form.

It is therefore ordered that you must pay the claimant £ US$93,935.34 [for the debt [and interest to date of judgment] and £ 460.00 for costs XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

You must pay to the claimant a total of £ US$93,935.34 together with taxed costs

[XXXXXXXXXXXXX £ per [XXXXX][XXXXX]

[XXXXXXXXXXXXXXXXXXXXXXXXXXXX] by XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXX]

### Warning

**If you ignore this order your goods may be removed and sold, or other enforcement proceedings may be taken against you. If this happens further costs will be added. If your circumstances change and you cannot pay, ask at the court office what you can do.**

**Notes for the defendant**

If you did reply to the claim form and believe judgment has been entered wrongly in default, you may apply to the court office giving your reasons why the judgment should be set aside. An application form is available for you to use and you will need to pay a fee. A hearing may be arranged and you will be told when and where it will take place. If you live in, or your solicitor's business is in, another court's area, the claim may be transferred to that court.

**Address for payment**

Andrew Jackson
Essex House
Manor Street
Hull
HU1 1XH

**How to pay**

- **Payment(s) must be made to the person named at the address for payment, giving the claimant's reference and claim number**
- **DO NOT bring or send payments to the court - they will not be accepted**
- You should allow at least 4 days for your payment to reach the claimant or his representative.
- Make sure that you keep records and can account for all payments made. Proof may be required if there is any disagreement. It is not safe to send cash unless you use registered post.

Offices within the Royal Courts of Justice, Strand, London WC2A 2LL are open between 10am and 4.30pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.